# UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

Appeal Case No. 14-1316

ABRIL-RIVERA, FRANCISCO, ET AL
Plaintiffs - Appellants,

MADELINE AGUAYO, ET AL
Plaintiffs

v.

JEH JOHNSON, Secretary of the Department of Homeland Security; US DEPT. OF HOMELAND SECURITY, FEDERAL EMERGENCY MANAGEMENT AGENCY

Defendants - Appellees,

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO
Civil No. 09-2113 (DRD)

---

# PETITION FOR REHEARING *EN BANC* AND PANEL REHEARING:

# QUESTIONS OF EXCEPTIONAL IMPORTANCE

---

**NOW COME** the before named Plaintiffs-Appellants and respectfully submit this Petition for Panel Rehearing and Rehearing *En Banc*:

This petition is submitted under Rules 35 and 40 of the Federal Rules of Appellate Procedure to avoid a serious miscarriage of justice affecting 273 Puerto Rican U.S. citizens that have been denied, by summary judgment, any redress for the damages they suffered as a result of the many acts of discrimination committed by FEMA. The Court should reexamine the Majority's ruling as there are legal and factual controversies that involve a question of exceptional importance about the following issue:

I. Whether the Panel incurred in gross error in affirming a summary judgment in favor of FEMA in contravention with Rule 56 of the Federal Rules of Civil Procedure, and this Circuit's case law, when there are multiple factual controversies which precluded such ruling.

On November 17, 2015, in a split decision, the Panel issued an Opinion confirming the District Court's Opinion and Order granting FEMA's Motion for Summary Judgment[1].  In this second ruling, the Majority concluded about Plaintiffs' disparate impact claims that, "[w]e reject the disparate impact claim

---

[1] An original Opinion was filed on July 30, 2015 to which Plaintiffs requested a Panel Rehearing and Rehearing En Banc because the Majority relied on a safety harbor provision that was never raised by FEMA. The Panel Rehearing was granted and the July 30th Opinion was withdrawn.  The November 17th Opinion followed and it eliminated all references to the safety harbor provision.

1

because, regardless of whether plaintiffs have made out a prima facie case of impact, defendants have presented legitimate business justifications for their actions, and there is no contrary evidence." (Majority, p. 15).  Regarding the retaliation causes of action, the Opinion states that "[w]e hold that plaintiffs have failed to make the requisite showing that the purported adverse employment activity was causally connected to any protected activity, much less that protected activity was a "but for" cause of the rotational staffing plan or the closing of the PR-NPSC." (Majority, p. 21). We strongly and respectfully disagree, and contend that this decision raises a question of exceptional importance about the burden of proof imposed on a plaintiff in the summary judgment stage, because Plaintiffs have presented more than enough evidence to show, at this juncture, that there are numerous controversies of fact that must be decided by the jury, which precluded a summary disposition of the case. However, the Court erroneously ignored Plaintiffs' evidence, made credibility assessments without a trial and drew all inferences in favor of FEMA, when it should have been in favor of Plaintiffs.

Rule 56 of the Federal Rules of Civil Procedure specifies that summary judgment is warranted when there "is no genuine issue as to any material fact".  A factual dispute is "genuine" if it could be resolved in favor of either party, and "material" if it potentially affects the outcome of the case. <u>Calero-Cerezo v. U.S. Dep't of Justice</u>, 355 F.3d 6, 19 (1st Cir.2004).  In determining whether an issue is

genuine, **the Court views the facts in the light most favorable to the nonmoving party and indulges all reasonable inferences in favor of that party**. *See* <u>Musa-Vega v. Rosario Melendez</u>, 2010 WL 5110120 (D. Puerto Rico 2010) (quoting <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 157 (1970)) (emphasis added).  Thus, the evidence on the record satisfies the current rule of law and, when viewed in light most favorable to the Plaintiffs, shows that there really are genuine controversies of material facts.

The Majority starts its Opinion by asserting that "[a]s far as we can tell, plaintiffs have not provided record evidence showing that they are actually of Puerto Rican ancestry and origin, such as to meet the definition of members of a protected minority group under Title VII."  This is not only a mistake, but also absurd and full of prejudice. One of the few uncontroverted facts of this case is that the 300+ Plaintiffs that comprised the original Complaint, which include the 273 Appellants, are of Puerto Rican national origin, as <u>it has been admitted by both parties</u>. *See* Defendant's Statements of Material Facts as to Which There Are No Genuine Issues ¶14 and Plaintiffs' Statements of Additional Uncontroverted Facts ¶14, Joint Appendix, pp. 37 and 425.

Now, in its discussion about the rotation system disparate impact claims, the Majority wrongly states that "Plaintiffs contend that the FEMA employees could have continued working in the center while the safety issues were addressed, but

3

their disagreement does not create a triable issue that FEMA's position resulted from Puerto Rican national origin discrimination." (Majority, p. 17). Plaintiffs do not merely disagree. They presented evidence to show that the issues raised in the May 2008 inspection were not life threatening and that the Puerto Rico National Processing Service Center (PRNPSC) employees had been working there for more than ten years, under the same conditions, and at no time were they evacuated from the facility nor a safety concern raised by anybody. It was only after the Puerto Rican employees started to file EEO complaints about discrimination that FEMA suddenly started to "care" about their safety. Definitively, as noted by the Majority on page 17, "these concerns should not have been ignored", however, it did not warrant a "temporary closure" of the building nor the implementation of the rotation system. This unequivocally creates a triable question about the legitimacy and good faith of Plaintiffs' proposed alternative.

Additionally, Plaintiffs also offered evidence to support a second less discriminatory alternative to FEMA's self-created need to have "as many employees as possible to assist in the event of a disaster", to not implement the rotation system and have all the employees return to their work. The evidence on record demonstrates that by July 10, 2008, when the rotations were implemented, the only "findings" left to solve were the building egress and the pedestrian man-gate in the exterior of the building. Both of these conditions existed in the building

4

since FEMA decided to establish the center in 1995 and never were serious enough to merit any closing. These were also noted in the 2007 Management Evaluation and Technical Assistance Review (METAR) inspection and FEMA was not compelled to close the center. Thus, Plaintiffs could have returned to their work on July 2008 and FEMA would have "served" their need to have "as many employees as possible to assist in the event of a disaster" while not discriminating against them. Although Title VII "did not require FEMA to re-staff the center the minute that the majority of the safety concerns were resolved", it did not require either that a building with findings such as the ones of the PRNPSC had to be evacuated and closed while repairs were completed. This was simply planned by FEMA to discriminate and retaliate against the Plaintiffs.

Regarding the rotation system retaliation claims, the Court determined that there is no temporal proximity between the protected activities and the implementation of the rotation system, and added that "[d]ismissal of an EEO complaint cannot be construed as protected activity on the part of the plaintiffs, and plaintiffs have presented no evidence that they actually filed individual complaints after the judge's decision, or that defendants anticipated they would." (Majority, pp. 22-23). This also is incorrect. The record shows that all Plaintiffs in this case filed the corresponding EEO complaint, otherwise they would not be able to prosecute a judicial claim because Title VII causes of action require employees

5

to exhaust administrative remedies. *See* Plaintiffs' Statements of Additional Uncontroverted Facts ¶40, Joint Appendix, p. 255.

Afterwards, the Majority states that "Plaintiffs suggest that there is more evidence of causation than mere temporal proximity" but concludes that "[they] are not persuaded." (Majority, p. 23). However, Plaintiffs did not "suggest" that there is more evidence of causation. Plaintiffs offered evidence to show that FEMA, in fact, deviated from its customary procedures when implementing the rotation system and closing the center. Plaintiffs presented evidence to show that FEMA had never conducted an inspection in the PRNPSC in twelve years, that FEMA decided to inspect the center only two months after various groups of supervisory employees filed EEO complaints and that the findings of both inspections (the July 2007 METAR inspection and the May 2008) were not life threatening and had been there for more than ten years. Finally, Plaintiffs also offered evidence to show that the findings of the July 2007 inspection had already been addressed and completed. Consequently, it is not a "logical reason" for the May 2008 inspection that "FEMA management was concerned about the safety issues identified in the 2007 METAR [inspection]". (Majority, p. 23). These facts, viewed in light most favorable to the non-moving party and making all inferences in favor of Plaintiffs, as mandated by Rule 56, create triable issues that could be solved in favor of Plaintiffs. In addition, at this stage of the proceedings, Plaintiffs do not have to

6

"persuade" the Court, Plaintiffs' burden at the summary judgment stage is to controvert the moving party's factual allegations, to show that there are genuine controversies of material facts, and they have clearly done so. It is the jury who has to be persuaded by the examination and cross-examination of witnesses, credibility assessments and the weighing of the evidence to reach the factual determinations, and this can only be done at trial.

With regards to the retaliation and disparate impact claims because of the closing of the PRNPSC, the Majority stated that Plaintiffs' arguments "add nothing to [their] case". (Majority, p. 46). Again, like in many instances throughout its Opinion, the Majority disregarded Plaintiffs' evidence which supported that FEMA's stated reasons to close the center – 1) safety concerns, 2) budget issues, 3) a decrease in Spanish call volume, 4) the lease was about to expire, 5) internet registrations were increasing – are all mere pretexts. For the first allegation, Plaintiffs presented the testimony on deposition of Kathy Fields[2] about a memorandum she issued on October 8, 2008 acknowledging that all the issues were "effectively addressed", thus the safety concerns at that stage are false.

As to the budget issues alleged by the Defendant, Plaintiffs offered FEMA's Answers to Interrogatories indicating that the PRNPSC had the lowest budget of

---

[2] Kathy Fields was the Deputy Branch Chief for NPSC Operations at the time of the events alleged, was the one in charge to overlook and supervise all NPSC operations for the four centers, and was the one who decided to temporarily close the center in May 2008, implement the rotation system and the amount of employees it would consist of.

all the four centers. Consequently, that could not be a valid reason to close the PRNPSC. A business decision that ignores the main criteria looked after, less expenses for the entity, raises serious questions about the legitimacy and truthfulness of the same, specially when that same year FEMA decided to relocate one of the most expensive centers of the four, the Virginia NPSC. *See* Joint Appendix, pp. 338 ¶23and 343-345. Plaintiffs argue that if there are two centers with issues, why FEMA decided to relocate the more expensive one of the two? *See* Joint Appendix, p. 44. Wasn't FEMA making a business decision?

When it comes to the decrease of Spanish calls, Plaintiffs included multiple statements under penalty of prejudice stating the duties of their positions, which included taking and processing calls in English, as well as in Spanish. In addition, FEMA admitted that after the closure of the center they had contracted the services of a language line[3]. Thus, FEMA really had a need for Spanish speaking employees. The argument that the lease was about to expire is clearly a pretext because the agency could have opted to simply renew it, as it had done before. Lastly, the internet registration increase was something that affected FEMA enterprise wide, not only the PRNPSC. *See* Joint Appendix, pp. 326, 328, 331, 334, 336 and 338 – Plaintiffs' Statements Under Penalty of Perjury.

The Panel's Opinion also states as a justification to permanently close the

---

[3] A language line is a service used by the agency to process all non-English calls, including the Spanish calls that Plaintiffs were processing.

8

center that "the PR- NPSC facility was 'not suitable to serve as a long-term NPSC operation' because it 'was never outfitted with modern systems furniture and the supporting electrical infrastructure and some of the critical telecommunications equipment needed to support future technology upgrades.'" (Majority, p. 11). However, FEMA seems to forget that during the EEO investigations performed for each of the complaints filed by the Plaintiffs, in the section regarding the less favorable working conditions and benefits, the agency's official concluded that "Branch Chief 2 further explained that "the PRNPSC was not unlike the initial facilities for the Maryland, Texas, and Virginia NPSCs. All had their beginnings in less than ideal facilities" and he added that improvements were made at all facilities designated as NPSCs, including the one in Puerto Rico." *See* Docket 98-1, p. 7. Hence, FEMA cannot argue that a factor to close the center was that it was "never intended to serve as a long term NPSC operation" because all of the centers started just as the PRNPSC and by the time of the closing all were already permanent fixed facilities. (Majority, p. 4).

The Majority's factual conclusions are improper because they were reached after pondering contradictory evidence and making credibility determinations in favor of FEMA's allegations. At the motion for summary judgment stage there is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, [and] no room for the judge to

9

superimpose his own ideas of probability and likelihood...." <u>Greenburg v. Puerto Rico Mar. Shipping Auth.</u>, 835 F.2d 932, 936 (1st Cir.1987).

In its Opinion, the Majority wrongly relies on <u>Texas Dept. of Housing and Community Affairs, et al. v. The Inclusive Communities Project, Inc.</u>, 135 S.Ct. 2507 (2015), to ground its decision to deny Plaintiffs' appeal by stating that disparate impact claims against the government should be "limited" so it can make "practical business choices and profit-related decisions" without the burden of "inject[ing] racial considerations into every [agency] decision." (Majority, p. 16) This, however, does not mean that employees are banned from seeking relief when they have been discriminated against. Or that employers, including government agencies, have a blank check to mask discriminatory acts as business decisions to avoid responsibility. Plaintiffs have not, at any time, implied that an agency needs to have racial considerations during the course of business. Plaintiffs allege that, while making those determinations, an agency cannot ignore the discriminatory impact those decisions may have, because that is strictly prohibited by the law. But more importantly, Plaintiffs contend that while the <u>Texas</u> case does give a government agency the opportunity to raise a business necessity defense, this does not overshadow that the principal objective of a public entity is not the same as a private corporation –to gain profits– rather to serve the citizens and, therefore, social and public policy considerations have to be taken into account and are the

real reason agencies are created in the first place. It is a mistake to simply equalize one another. Even so, Plaintiffs presented evidence to show that the Puerto Rico National Processing Service Center had lower operating costs that the other three centers (Virginia, Maryland and Washington), even after relocating to a new facility or updating the one with the alleged deficiencies. If FEMA truly wanted to make a business decision, it would not have closed the PRNPSC.

On the other hand, citing Texas to support its decision, the Majority also added that "before rejecting a business justification . . . a court must determine that a plaintiff has shown that there is 'an available alternative . . . practice that has less disparate impact and serves the [entity's] legitimate needs.'" (Majority, p. 16). We agree, that is the burden imposed on a plaintiff pursuing a disparate impact claim. Nonetheless, this premise is not contrary to Plaintiffs' allegations that when there are controversies of fact regarding the circumstances under which the events transpired and the less discriminatory alternatives available, it is the jury, and not the Court, summarily, who has to make the determination about the sufficiency of Plaintiffs' evidence to make this showing. *See,* Dissenting, p. 39-40. In this case, both the District Court and the Majority, made erroneous and unfair determinations of fact, credibility assessments and weighted evidence to reach factual conclusions, which are of the exclusive competence of the jury. The Majority misinterpreted Texas by concluding that Plaintiffs have to *prove* the less discriminatory available

11

alternative, when it is the "defendant… [who] must prove that there are no other less discriminatory alternatives to advancing their proffered interests." Id. (Internal quotations omitted.)

For all the above, "Plaintiffs' request for relief on appeal is that [the Court] remand[s] this case so that a **fact finder** can decide whether their alternatives to FEMA's business needs defeat FEMA's justifications, and whether FEMA's adverse actions against Plaintiffs are the result of retaliatory actions arising from their claims for equal working conditions and their requests to return to work during the rotational staffing plan." (Dissenting, p. 32). The record, with all inferences made in favor of the Plaintiffs, overwhelmingly shows factual controversies that must be decided by a jury after a trial, not summarily.

## **Conclusion:**

Rehearing En Banc and/or Panel Rehearing is merited in this case and should be granted because Plaintiffs have complied with the burden of proof imposed by Rule 56 of the Fed. R. Civ. Proc. at this stage of the proceedings, which is to controvert the factual allegations of FEMA, and the Court exceeded its authority by making determinations of fact when the evidence offered by the Plaintiffs unequivocally shows multiple triable controversies. The Court is not called to make credibility assessments, weighing of evidence, be "persuaded" or find "logical reasons" for FEMA's acts at this juncture, as it did, that is strictly

reserved for the jury at trial. Therefore, in order to prevent a miscarriage of justice, Plaintiffs' petition should be granted and the District Court's decision revoked.

**WE HEREBY CERTIFY** that on this same date, we electronically filed the Appellants' Brief in the above captioned case with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel for all parties, at their electronic addresses of record.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 16th day of December of 2015.

*s/Adriana G. Sánchez Parés*
**Adriana G. Sánchez Parés**
First Circuit Bar No. 1158535

*s/Álvaro R. Calderón, Jr.*
**Álvaro R. Calderón, Jr.**
First Circuit Bar No. 46121

*s/Francisco J. Ortíz García*
**Francisco J. Ortíz García**
First Circuit Bar No. 1092045

ÁLVARO R. CALDERÓN, JR. L.L.P. LAW OFFICE
PO Box 192259
San Juan, Puerto Rico 00919-2259
Tel. (787) 753-5050
Fax. (787) 765-8028
Email: arc@microjuris.com